## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMIBA

AMERICAN FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL ORGANIZATIONS
815 16th St NW,
Washington, D.C. 20006,

       Plaintiff,

v.

NATIONAL LABOR RELATIONS BOARD
1015 Half St. SE,
Washington, D.C. 20570,

       Defendant.

Civil Case No. 20-cv-00675

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.   Plaintiff American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") brings this action against the National Labor Relations Board ("NLRB" or "Board") seeking a declaration that the Board's publication of a final rule in the Federal Register on December 18, 2019, Representation – Case Procedures, 84 Fed. Reg. 69,524 (Dec. 18, 2019) ("the 2019 election rule"), without prior notice and comment violated the Administrative Procedure Act ("APA") on the grounds that (1) the Board did not comply with the procedural requirements of the APA, (2) the Board's action was arbitrary and capricious as a whole under the APA, (3) specific parts of the 2019 rule are arbitrary and capricious under the APA, and (4) the rule is inconsistent with the National Labor Relations Act ("NLRA"), and thus violates the APA.  Plaintiff also seeks a preliminary and permanent injunction against implementation of the rule, which is currently scheduled to take effect on April 16, 2020.

## JURISDICTION AND VENUE

2.   Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and the APA, 5 U.S.C. § 702 ("[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof").

3.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because (a) the NLRB resides in the District of Columbia; (b) a substantial number of the events giving rise to this claim, including actions taken by the Board in promulgating the rule, occurred in the District of Columbia; and (c) the AFL-CIO has its headquarters and principal office in the District of Columbia and does business in the District of Columbia.

4.   This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706 (violations of the APA).

## PARTIES

5.   Plaintiff AFL-CIO is an unincorporated labor organization consisting of 55 national and international labor organizations representing over 12 million working women and men.

6.   The national union affiliates of the AFL-CIO ("AFL-CIO unions") and their local unions are frequently parties to representation proceedings and elections conducted by the NLRB that will be governed by the 2019 election rule should it take effect.

7.   Should it take effect, the 2019 election rule will make it more difficult for AFL-CIO unions to obtain elections, will delay those elections, will prejudice unions' ability to campaign in those elections, will delay the counting of ballots after those elections, and will delay the certification of unions as the representative of employees and, in so doing, will delay employers'

legal duty to bargain when a majority of employees chooses a representative to engage in bargaining in those elections.  The 2019 election rule will have an irreparable and incalculable adverse impact on AFL-CIO unions' ability to obtain the right to represent employees and on subsequent collective bargaining on behalf of those employees.   The AFL-CIO unions and their locals would have standing to challenge the rule in their own right.

8.   A principal purpose of the AFL-CIO is to assist its affiliated unions in promoting the organization of unorganized workers into unions of their own choosing and obtaining for those workers the right to bargain collectively with their employers.  Article II, section two of the AFL-CIO Constitution provides that one of the objects of the Federation is "[t]o aid and assist affiliated unions in extending the benefits of mutual assistance and collective bargaining to workers and to promote the organization of the unorganized into unions of their own choosing for their mutual aid, protection and advancement."  Article X, section nine(a) of the Constitution further provides that "[t]he Executive Council [of the AFL-CIO – the highest governing body between conventions – ] shall use every possible means to assist affiliated unions in the organization of the unorganized and to organize new national and international unions, organizing committees, and directly affiliated local unions."

9.   The lawsuit is a facial challenge to the 2019 election rule and does not require the participation of individual AFL-CIO unions.

10. The AFL-CIO has filed comments concerning every notice of proposed rulemaking issued by the NLRB in the last several decades, including the notice that led to a 2014 rule that would be largely repealed by the 2019 election rule at issue here.

11. If the NLRB had given notice and provided an opportunity to comment before issuing the 2019 election rule, the AFL-CIO would have submitted comments.

12. Defendant NLRB is an independent agency in the executive branch of the federal government.  The NLRB was created and is constituted by the NLRA § 3(a), 29 U.S.C. § 153(a).

### FACTS

### HOW EMPLOYEES EXERCISE THEIR RIGHT TO REPRESENTATION UNDER THE NLRA

13. The right to engage in collective bargaining is the central, substantive right created by the NLRA.  Section 7 of the Act vests in employees "the right . . . to bargain collectively through representatives of their own choosing."  29 U.S.C. § 157.

14. Section 9 of the NLRA vests in employees a right to petition the NLRB to conduct an election through which employees can select such a representative, change representatives, or demonstrate that they no longer wish to be represented.  29 U.S.C. § 159(c).

15. Absent serious unfair labor practices that render a fair election impossible, the only means by which employees can compel their employer to bargain with their chosen representative is by exercising their right to petition for an election.

16. Petitions for elections are filed with one of the Board's regional directors who process petitions, conduct elections, and certify the results, subject to Board review.

17. Absent agreement of all parties, the regional director must conduct a hearing before directing that an election take place and supervising that election.

18. The Board has designated the time between the filing of a petition under Section 9 and the conduct of an election as the "critical period" and it is often marked by vigorous campaigning by employees, the union, and the employer.

19. The length of the "critical" campaign period is determined, directly and indirectly, by the Board's rules.

4

20. A direction of election triggers an obligation on the part of the employer to provide a list of eligible voters, together with contact information, to the union or the petitioning employees. *Excelsior Underwear, Inc.*, 156 NLRB 1236 (1966).  That obligation was codified in the 2014, and the current rule provides that the list must be provided within two business days of the direction of election.

21. The parties are entitled to select observers to be present during the casting of ballots.

22. If a majority of employees in an appropriate unit vote to be represented by a union, the regional director certifies the union as the representative of the employees.

23. The employer's legal duty to recognize the employees' chosen representative and commence collective bargaining with that representative attaches upon such certification.

## REGULATORY HISTORY

24. On December 15, 2014, the NLRB published in the Federal Register a final rule containing comprehensive amendments of the rules governing employees' right to seek an election to obtain representation, change representatives, or decertify an existing representative. Representation – Case Procedures, 79 Fed. Reg. 74,308 (Dec. 15, 2014) ("the 2014 election rule").

25. The primary purpose of the 2014 amendments was "to remove unnecessary barriers to the fair and expeditious processing of representation cases."  79 Fed. Reg. at 74,308

26. The 2014 amendments resulted from a deliberative process that included two Notices of Proposed Rulemaking; receipt of comments and reply comments on those proposals for a total of 141 days; and two public hearings over a total of four days, including questioning of witnesses by Board Members. This process yielded almost 75,000 comments and more than a thousand transcript pages of oral commentary.

27. The United States Chamber of Commerce, the Associated Builders and Contractors, and other employer associations and advocates challenged the 2014 rule in two separate actions on multiple legal grounds.  The 2014 election rule was upheld by two federal district courts and the Fifth Circuit.  *See Associated Builders and Contractors of Texas, Inc. v. NLRB*, 826 F.3d 215 (5th Cir. 2016); *Chamber of Commerce of U.S. v. NLRB*, 118 F.Supp.3d 171 (D.D.C. 2015).

28. In December 2017, the NLRB issued a Request for Information (RFI) concerning how the 2014 election rule was working.  Representation – Case Procedures, 82 Fed. Reg. 58,783 (Dec. 14, 2017).

29. In the RFI, the Board specifically asked for

> information relating to the following questions: 1. Should the 2014 Election Rule be retained without change? 2. Should the 2014 Election Rule be retained with modifications? If so, what should be modified? 3. Should the 2014 Election Rule be rescinded? If so, should the Board revert to the Election Regulations that were in effect prior to the 2014 Election Rule's adoption, or should the Board make changes to the prior Election Regulations? If the Board should make changes to the prior Election Regulations, what should be changed?

82 Fed. Reg. at 58,784.  The RFI stated, "the Board believes it will be helpful to solicit and consider public responses to this request for information."  82 Fed. Reg. at 58,783.

30. The Board received nearly 7,000 submissions in response to the RFI.

31. The Board's own regional directors, who actually process petitions and supervise elections submitted a response to the RFI.  The regional directors concluded, "While parties initially voiced great concerns about the 2014 Election Rule, to all the parties' credit, after the initial learning curve, there have been very few difficulties in the adoption of the rules."

32. Plaintiff AFL-CIO submitted a detailed response to the RFI.  The response was based on the NLRB's reply to an extensive Freedom of Information Act request for data

concerning the operation of the 2014 election rule as compared to the pre-2014 election rule.  The data was analyzed by a leading academic expert on NLRB elections, Professor John-Paul Ferguson, now of McGill University.  Professor Ferguson produced a 47-page report based on the Board's own data.  The AFL-CIO submitted the report, in full, in response to the RFI.  Professor Ferguson's report demonstrated that the 2014 amendment had been successful in expediting the processing of petitions without producing any adverse consequences.  "I concluded that the amendments are associated with a significant decrease in the time between petition and election and the time between petition and the closing of cases, but that the amendments are not associated with any other significant changes in case processing variable or outcomes."  Professor Ferguson concluded that the 2014 amendments produced significant efficiencies without any adverse consequences.

33. On December 18, 2019, the NLRB published in the Federal Register a final rule largely repealing the 2014 amendments.  84 Fed. Reg. at 69,524.

34. The 2019 election rule, preamble and dissent occupy 77 pages in the Federal Register.

35. The 2019 election rule makes significant changes to the substantive rights of employees, labor organizations, and employers, *inter alia*, creating additional barriers confronting a party seeking an election supervised by the NLRB; creating a right to an advisory opinion from a regional director on the status of individual employees prior to an election; extending the campaign period prior to such elections; delaying the provision of a list of eligible voters in such elections; limiting which parties can be designated as observers in such elections; and delaying the counting of ballots, the certification of results, and thus the obligation of employers to bargain collectively with their employees' chosen representative.

36. The 2019 election rule was issued without notice and without any opportunity to comment.

37. When the Board issued the 2019 election rule, it expressly stated in the preamble, "[n]one of the procedural changes that we make today are premised on the responses to the Request for Information; indeed, we would make each of these changes irrespective of the existence of the Request for Information."  84 Fed. Reg. at 69,528 n. 12.

38. The 2019 election rule states that it will take effect on April 16, 2020.

39. During the last fiscal year, 1,993 petitions for elections, an average of 5.5 per day, were filed with the NLRB, the majority involving AFL-CIO unions.

40. AFL-CIO unions will file petitions for elections and be parties to proceedings initiated by employees, employers, and other labor organizations as soon as the 2019 election rule takes effect.

41. Examples of AFL-CIO unions that will file petitions for elections after the 2019 election rule takes effect include the International Association of Machinists and Aerospace Workers (IAM), which filed approximately 187 petitions for election in 2019.  The IAM has many on-going organizing drives that will result in the filing of election petitions throughout 2020, including shortly after the effective date of the 2019 election rule.  Additionally, at least two local unions of affiliate union UNITE-HERE plan to file election petitions in on-going organizing drives, most likely shortly after the effective date of the 2019 election rule.  These are just examples of the hundreds of active organizing drives by AFL-CIO unions that will result in the filing of election petitions in the days and weeks immediately after the announced effective date of the 2019 election rule.

42. The 2019 election rule will cause irreparable and incalculable harm to the AFL-CIO, AFL-CIO unions, local unions affiliated with those AFL-CIO unions, and employees represented or who wish to be represented by the labor organizations and local unions.

## COUNT ONE

### THE BOARD'S PROMULGATION OF THE 2019 ELECTION RULE WITHOUT NOTICE AND OPPORTUNITY TO COMMENT VIOLATED THE APA

43. The allegations in paragraphs 1-42 are incorporated here.

44. The NLRB's rulemaking, including the promulgation of the 2019 election rule, is subject to the requirements of the APA.

45. Unless a rule falls within an explicit statutory exception, the APA requires the NLRB to provide public notice of the proposed rulemaking and an opportunity for interested members of the public to comment on the proposal. 5 U.S.C. § 553(b), (c).

46. The preamble to the 2019 election rule states "the final rule is procedural as defined in 5 U.S.C. 553(b)(A), and is therefore exempt from notice and comment."  84 Fed. Reg. at 69,528.

47. The central parts of the 2019 election rule are not procedural rules as defined in the APA and all other parts of the 2019 election rule are not severable from those central, substantive parts.

48. The 2019 election rule is not a procedural rule because, *inter alia*, it adds to the issues a petitioning party must litigate before obtaining an election; it vests in parties a right to an advisory opinion from a NLRB regional director on the status of particular individuals under the NLRA; it increases, directly and indirectly, the length of the critical, campaign period; it contracts a petitioner's right to a list of eligible voters; it contracts parties' right to select an election observer of their choice; and it delays employees' right to bargain collectively in many

cases even after a majority votes in favor of representation by preventing regional directors from counting the ballots and certifying the results.

49. The promulgation of the 2019 election rule, in whole and in part, did not fall into any of the exceptions to the APA's requirement of notice and comment.

50. The Board's promulgation of the 2019 election rule without notice and comment violated the APA and was without observance of procedure required by law under 5 U.S.C. § 706(2)(D).

## COUNT TWO

### THE BOARD'S PROMULGATION OF THE 2019 ELECTION RULE AS A WHOLE WAS ARBITRARTY, CAPRICIOUS AND AN ABUSE OF DISCRETION IN VIOLATION OF THE APA

51. The allegations in paragraphs 1-50 are incorporated here.

52. The Board has access to and plenary control over all information and data concerning the operation of the 2014 election rule and how it affected employees, employers, and labor organizations, as well as comparable information and data concerning the operation of the pre-2014 election rule.

53. In promulgating the 2019 election rule, the Board failed to consider information and data within its own control that contradicts assertions in the Board's rationale for the rule and would otherwise have informed the rulemaking process.

54. In promulgating the 2019 election rule, the Board failed to consider data and other information that was supplied to the Board pursuant to its own RFI that contradicts assertions in the Board's rationale for the rule and would otherwise have informed the rulemaking process.

55. In promulgating the 2019 election rule, the Board repeatedly referred to comments and information submitted to the Board without specifying the author of the comments or the source of the information.

56. In promulgating the 2019 election rule, the Board repeatedly referred to predictions that dissenters from the 2014 election rule had made about the consequences of adopting the rule. The Board relied on those predictions without evaluating available data concerning the almost five years of actual operation of the 2014 election rule that demonstrates the predictions have proven false.

57. In promulgating the 2019 election rule, the Board relied on stale assertions about the expected consequences of adopting the 2014 election rule that were illogical when made and have proven to be demonstrably false.

58. In whole and in part, the 2019 election rule will not serve the purposes asserted by the Board in its preamble.

59. The Board's promulgation of the 2019 election rule as a whole was arbitrary, capricious and an abuse of discretion in violation of the APA. 5 U.S.C. § 706(2)(A).

## COUNT THREE

**THE BOARD'S PROMULGATION OF PARTS OF THE 2019 ELECTION RULE WAS ARBITRARTY, CAPRICIOUS AND AN ABUSE OF DISCRETION IN VIOLATION OF THE APA**

60. The allegations in paragraphs 1-59 are incorporated here.

61. Several specific provisions of the 2019 election rule, including the provisions described below, are internally inconsistent and illogical; fail to make a reasonable connection between the facts invoked to justify them and the choice made; fail to consider essential parts of the problem; or fail to address known contrary evidence.

62. The 2019 election rule allows parties to litigate individual eligibility and unit-inclusion questions and requires regional directors to decide such questions prior to an election even though many such questions will be mooted by the election results.

63.  The 2019 election rule allows parties to litigate individual eligibility and unit-inclusion questions and requires regional directors to decide such questions prior to an election even though the regional director's decision will provide neither a timely nor a final answer to such questions.

64. The 2019 election rule prevents regional directors from setting an election date sooner than 20 business days after the direction of election in order to permit the parties to file and the Board to rule on a request for review even though very few such requests are filed, fewer are granted, fewer still result in a reversal of the regional director's decision, and almost none are disposed of prior to the election.

65.  The 2019 election rule *sub silentio* overrules a number of Board decisions governing parties' choice of observers.

66. By limiting employer's choice of observers to employees in the voting unit, the 2019 election rule will cause employers in many instances to ask employees to visibly identify with the employer's position on representation by serving as its observer in violation of the Board's own prohibition of such polling.

67. By preventing regional directors from counting the ballots when a request for review has been filed within 10 days of a direction of election and that request for review remains pending, the 2019 election rule deprives employers of information they need in order to determine whether they are free to make unilateral changes in wage, hours, and working conditions under Board precedent that makes such changes unlawful after the election if the union is ultimately certified.

68.  By preventing regional directors from counting the ballots when a request for review has been filed within 10 days of a direction of an election and that request for review remains

pending, the 2019 election rule requires that the Board decide issues that have been mooted by the election results.

69. The Board's promulgation of those parts of the 2019 election rule and others was arbitrary, capricious, and an abuse of discretion in violation of the APA. 5 U.S.C. § 706(2)(A).

## COUNT FOUR

### THE BOARD'S PROMULGATION OF THE 2019 ELECTION RULE VIOLATES THE NATIONAL LABOR RELATIONS ACT, AS AMENDED, IN VIOLATON OF THE APA

70. The allegations in paragraphs 1-69 are incorporated here.

71. The 2019 election rule substitutes Congress' judgment, expressed in the text of the NLRA, that any stay of a regional director's actions with respect to representation proceedings must be considered on a case-by-case basis, with a series of categorical stays that are triggered regardless of whether the facts of the particular case justify a stay.

72. The 2019 election rule prevents the Board's regional directors from scheduling an election sooner than 20 business days after the regional director issues a direction of election in order to "permit the Board to rule upon certain types of requests for review prior to the election." 84 Fed. Reg. at 69,525.

73. The 2019 election rule stays the counting of ballots by the regional directors or at the direction of the regional director in all cases in which a request for review is filed with the Board within 10 days of the direction of election and the Board has not yet ruled on the request.

74. The 2019 election rule bars regional directors from certifying the results of elections if the time for a party to file a request for review has not run or if a request for review is pending.

75. Congress amended the National Labor Relations Act in 1959 to provide:

> The Board is . . . authorized to delegate to its regional directors its powers under section 159 of this title to determine the unit appropriate for the purpose of collective bargaining, to investigate and provide for hearings, and determine whether a question of representation exists, and to direct an election or take a secret ballot under subsection (c) or (e) of section 159 of this title and certify the results thereof.

29 U.S.C. § 153(b).

76.  The 1959 amendments also provide:

> upon the filing of a request therefor with the Board by any interested person, the Board may review any action of a regional director delegated to him under this paragraph, but such a review *shall not, unless specifically ordered by the Board, operate as a stay of any action taken by the regional director.*

29 U.S.C. § 153(b). (emphasis added)

77.  Congress adopted these amendments in order to expedite the processing of petitions for elections and the resolution of questions of representation.

78. The Board effected the authorized delegation of authority soon after Congress authorized it.  *See* 26 Fed. Reg. 3,885 (May 4, 1961).

79. By imposing a categorical, preemptive stay on the scheduling of elections premised solely on the possibility that a party may file a request for review, the Board violated Section 3(b) of the NLRA and acted not in accordance with law under 5 U.S.C. § 706(2)(A), and in excess of statutory jurisdiction, authority, or limitations, and short of statutory right under 5 U.S.C. § 706(2)(C).

80.  By imposing a categorical stay on the counting of ballots premised solely on the filing of a request for review, the Board violated Section 3(b) of the NLRA and acted not in accordance with law under 5 U.S.C. § 706(2)(A) and in excess of statutory jurisdiction, authority, or limitations, and short of statutory right under 5 U.S.C. § 706(2)(C).

81. By imposing a categorical stay on certification of the results of an election premised solely on the possible filing or pendency of a request for review, the Board violated Section 3(b) of the NLRA and acted not in accordance with law under 5 U.S.C. § 706(2)(A) and in excess of statutory jurisdiction, authority, or limitations, and short of statutory right under 5 U.S.C. § 706(2)(C), all in violation of the APA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff requests that this Court enter judgment in its favor and

1. Declare that the NLRB's promulgation of the 2019 election rule without notice and comment violated the APA; that the NLRB's promulgation of the rule was arbitrary, capricious and an abuse of discretion in violation of the APA; and that the rule violates the NLRA and thus the APA.

2. Vacate and set aside the 2019 election rule.

3. Issue a preliminary and permanent injunction barring the NLRB and its agents and employees from implementing and enforcing the 2019 election rule.

4. Award Plaintiff costs, including reasonable attorney's fees.

5. Grant such other relief as is just and proper.

Dated: March 6, 2020                        Respectfully Submitted,

/s/ Leon Dayan
Leon Dayan (D.C. Bar No. 444144)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, NW, Ste. 1000
Washington, D.C. 20005
Phone: (202)-842-2600
E-mail: ldayan@bredhoff.com

James B. Coppess (D.C. Bar No. 347427)
Matthew J. Ginsburg (D.C. Bar No. 1001159)

(application for admission pending)
Maneesh Sharma (D.C. Bar No. 1033407)
 (application for admission pending)
AFL-CIO Legal Department
815 16th Street, NW
Washington, DC 20006
Phone: (202)-637-5337
E-mail: mginsburg@aflcio.org

*Counsel for Plaintiffs*