**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN FEDERATION OF LABOR – CONGRESS OF INDUSTRIAL ORGANIZATIONS,** | |
| **Plaintiff,** | **Case No. 20-cv-000675-KBJ** |
| **v.** | **Motion hearing set for 5/14/2020 at 10:30 a.m.** |
| **NATIONAL LABOR RELATIONS BOARD,** | |
| **Defendant.** | |

**NATIONAL LABOR RELATIONS BOARD'S (CORRECTED) REPLY IN SUPPORT OF MOTION FOR TRANSFER TO THE D.C. CIRCUIT TO CURE WANT OF JURISDICTION**

# TABLE OF AUTHORITIES

**Cases** ..................................................................................................................... **Page**

*Abbott Laboratories v. Gardner*,
387 U.S. 136 (1967).......................................................................................... 9

*American Federation of Labor v. NLRB*,
308 U.S. 401 (1940).......................................................................................... 6

*Bennett v. Spear*,
520 U.S. 154 (1997).......................................................................................... 3

*Boire v. Greyhound Corp.*,
376 U.S. 473 (1965).......................................................................................... 7

*Browning-Ferris Indus. of Cal., Inc.*,
362 NLRB 1599 (2015) ..................................................................................... 9

*Carter v. United States*,
530 U.S. 255 (2000).......................................................................................... 6

*Citizens Awareness Network, Inc. v. United States*,
391 F.3d 338 (1st Cir. 2004) ............................................................................ 10

*City of Chicago v. Fed. Power Comm'n*,
458 F.2d 731 (D.C. Cir. 1971) .......................................................................... 10

*City of Rochester v. Bond*,
603 F.2d 927 (D.C. Cir. 1979) .......................................................................... 10

*Fed. Election Comm'n* v. *NRA Political Victory Fund*,
513 U.S. 88 (1994)............................................................................................ 2

*Florida Power & Light Co. v. Lorion*,
470 U.S. 729 (1985).......................................................................................... 10

*Foley-Wismer & Becker v. NLRB*,
682 F.2d 770 (9th Cir. 1982) ............................................................................ 8

*Gen. Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy*,
764 F.2d 896 (D.C. Cir. 1985).......................................................................... 10

*General Drivers, Chauffeurs & Helpers, Local 886, v. NLRB*,
179 F.2d 492 (10th Cir. 1950) .......................................................................... 6

*Inland Container Corp. v. NLRB*,
137 F.2d 642 (6th Cir. 1943) ............................................................................ 6

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982).......................................................................................... 1

*Investment Co. Institute v. Board of Governors of the Federal Reserve System*,
551 F.2d 1270 (D.C. Cir. 1977) ........................................................................ 9, 10

*Keiler v. NLRB*,
1996 WL 103746 (D.C. Cir. 1996) ................................................................... 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994).......................................................................................... 1

*Laundry Workers Int'l Union Local 221 v. NLRB*,
197 F.2d 701 (5th Cir. 1952) ............................................................................ 7

*Leedom v. Kyne*,
358 U.S. 184 (1958) .......... 7

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 2

*Lincourt v. NLRB*,
170 F.2d 306 (1st Cir. 1948) .......... 7

*Loan Syndications & Trading Ass'n v. SEC*,
818 F.3d 716 (D.C. Cir. 2016) .......... 3

*Manhattan Constr. Co. v. NLRB*,
198 F.2d 320 (10th Cir. 1952) .......... 8

*Mansfield, C. & L.M.R. Co. v. Swan*,
111 U.S. 379 (1882) .......... 1

*McCulloch* v. *Sociedad Nacional*,
372 U.S. 10 (1961) .......... 7

*N.Y. Republican State Comm. v. SEC*,
799 F.3d 1126 (D.C. Cir. 2015) .......... 3, 5

*Nat'l Ass'n of Mfrs. v. Dep't of Defense*,
138 S. Ct. 617 (2018) .......... 2, 4

*Nat'l Auto. Dealers Ass'n v. FTC*,
670 F.3d 268 (D.C. Cir. 2012) .......... 2, 5, 6

*Nat'l Parks & Conservation Ass'n v. FAA*,
998 F.2d 1523 (10th Cir. 1993) .......... 10

*NLRB v. Bell Aerospace Co.*,
416 U.S. 267 (1974) .......... 9

*NLRB v. United Food & Commercial Workers, Local 23*,
484 U.S. 112 (1987) .......... 7

*Nw. Airlines, Inc. v. Goldschmidt*,
645 F.2d 1309 (8th Cir. 1981) .......... 10

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
139 S. Ct. 2051 (2019) .......... 9

*Rodriguez v. Penrod*,
857 F.3d 902 (D.C. Cir. 2017) .......... 2

*Sebelius v. Auburn Reg'l Med. Ctr.*,
568 U.S. 145 (2013) .......... 1

*Shell Chem. Co. v. NLRB*,
495 F.2d 1116 (5th Cir. 1974) .......... 8

*Sima Prods. Corp. v. McLucas*,
612 F.2d 309 (7th Cir. 1980) .......... 10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 2

*United States* v. *More*,
7 U.S. (3 Cranch) 159 (1805) .......... 2

*Vaca v. Sipes*,
386 U.S. 171 (1967) .......... 7

**Statutes** ..... **Page**

5 U.S.C. § 701(a) ..... 7
5 U.S.C. § 702 ..... 7
28 U.S.C. § 1631 ..... 8
29 U.S.C. § 159(d) ..... 6
29 U.S.C. § 160(f) ..... 3, 4
29 U.S.C. § 160(k) ..... 8

**Rules** ..... **Page**

D.C. Cir. R. 32.1(b)(1)(A) ..... 8

**Regulations** ..... **Page**

29 C.F.R. § 101.2-3 ..... 5
29 C.F.R. § 102.124 ..... 4
29 C.F.R. § 102.177 ..... 8

**Other Authorities** ..... **Page**

76 Fed. Reg. 54,005 (Aug. 30, 2011) ..... 5
85 Fed. Reg. 11,184 (Feb. 26, 2020) ..... 9

1. “Federal courts are courts of limited jurisdiction.” *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The rule that a court may not proceed where it lacks subject-matter jurisdiction “is inflexible and without exception.” *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1882). Consequently, a failure of subject-matter jurisdiction is “unique in our adversarial system. Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy.” *Sebelius v. Auburn Reg’l Med. Ctr.*, 568 U.S. 145, 153 (2013). In other words, a plaintiff cannot enlarge a federal court’s subject-matter jurisdiction by reference to “principles of estoppel.” *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Accordingly, AFL-CIO’s various efforts (Opp. at 2, 7, 8) to show that the Board’s position is inconsistent with prior positions that it has taken are irrelevant and miss the mark.

2. There is no question that the issue of jurisdiction to review National Labor Relations Act (“NLRA” or “the Act”) rulemakings was accorded insufficient attention—and indeed, for the most part, *no attention at all*—in prior cases. AFL-CIO does not contend otherwise. But this Court’s sole task is to ascertain whether its jurisdiction extends to the issue in question, not to assign blame for past errors. And in so doing, “the existence of unaddressed jurisdictional defects” in a prior decision “has no precedential effect.” *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) (citing *Fed. Election Comm'n* v. *NRA Political Victory Fund*, 513 U.S. 88, 97 (1994); *United States* v. *More,* 7 U.S. (3 Cranch) 159, 172 (1805) (Marshall, C. J.) (bench decision)). The question of jurisdiction is too essential to be decided by “drive-by jurisdictional holdings.” *Steel Co. v. Citizens for a Better Env’t*, 523 U.S. 83, 91 (1998). The only question at issue here is whether the NLRA’s provisions channeling judicial review to the circuit courts should be read to encompass this case.

3. Turning then to that question, AFL-CIO gains no purchase from the undisputed observation (Opp. at 2) that "the normal default rule is that persons seeking review of agency action go first to district court rather than to a court of appeals." *Nat'l Auto. Dealers Ass'n v. FTC*, 670 F.3d 268, 270 (D.C. Cir. 2012) (cleaned up). That default rule simply does not apply where the statute in question contains a channeling provision; in such cases, instead, the default rule is to read the channeling provision to encompass review of agency action—avoiding the irrationality of splitting judicial review between different levels of the court system—unless there is a "firm indication" that Congress intended such a split. *Nat'l Auto. Dealers Ass'n v. FTC*, 670 F.3d 268, 270 (D.C. Cir. 2012) (cleaned up).[1]

4. A bit confusingly, the *National Automobile Dealers* exception contains its own exception. When a direct-review provision extends only to rules made pursuant to particular statutory authorities, it cannot be interpreted to extend to rules made under *other* statutory authorities—else the limitations upon direct review would be disregarded. *Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617, 626 (2018) (*NAM*). This rule has been repeatedly applied by the D.C. Circuit, notably in the chief case, *Loan Syndications & Trading Ass'n v. SEC*, 818 F.3d 716, 719 (D.C. Cir. 2016), upon which AFL-CIO relies in resisting the Board's motion. In that case, the Exchange Act provided for direct review of rules issued "pursuant to section 78f, 78i(h)(2), 78k, 78k-1, 78o(c)(5) or (6), 78o-3, 78q, 78q-1, or 78s" of that Act, and the rule in question was issued under Section 78o-11 of the same Act. *Id.* at 720. Transparently, then, direct review of that rule could not be had without adding an extratextual codicil to the list of authorities contained in the direct-review provision.

[1] Accordingly, AFL-CIO's citation to *Rodriguez v. Penrod*, 857 F.3d 902, 906 (D.C. Cir. 2017), is simply inapposite—in that case, "nothing in Section 1034(h) or any other provision of the Whistleblower Act provide[d] for direct review in the courts of appeals." *Id.*

5. This case presents no such problems. On its face, the first clause of Section 10(f) of the NLRA, 29 U.S.C. § 160(f), encompasses the instant rulemaking. That Section provides in relevant part that:

> Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such court a written petition praying that the order of the Board be modified or set aside.

The jurisdictional trigger here, then, is "a final order of the Board" that grants or denies some form of "relief." And the Final Rule at issue in this case meets each of these criteria. Is it "final"? Certainly—it is the culmination of the Board's decision-making process, and legal consequences flow from it. *Bennett v. Spear*, 520 U.S. 154, 178 (1997).[2] Is it an "order"? Again, yes—for purposes of direct-review statutes, rulemakings are a form of "order" subject to circuit-court review. *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1130-34 (D.C. Cir. 2015) (*NYRSC*). Does it grant or deny relief? Once more, yes—the Rule makes significant changes to the Board's procedures for deciding representation cases.[3] There is no class of "final orders of the Board granting or denying . . . relief" for which circuit-court review is *not* available, and thus the exception-to-the-exception enunciated in *NAM*, 138 S. Ct. at 626, does not apply.

---

[2] As discussed more fully in ¶ 10, below, a lack of finality would not suggest that AFL-CIO could obtain judicial review in this court; it would mean that judicial review was not available anywhere.

[3] Although no outside party specifically "sought" relief in the form of a rulemaking petition, the Board itself sought—and granted—relief when it entered the Final Rule. No distinction of jurisdictional substance can be drawn between orders making or refusing to make rules in response to a petition, *see, e.g.*, *Notification of Employee Rights Under the National Labor Relations Act*, 76 Fed. Reg. 54,005 (Aug. 30, 2011), and orders making rules on an agency's own motion such as the Final Rule in this case. It would be hypertechnical and illogical to hold that rules issued by an agency on its own initiative must be challenged in district court, but rules issued in response to a petition must be challenged in circuit court. To so hold would allow petitioners similarly situated to AFL-CIO to effectively choose which court their review petition goes to by either filing, or declining to file, an otherwise-futile petition with the agency to reverse its rulemaking. 29 C.F.R. § 102.124. Subject-matter jurisdiction cannot hinge on such tactical calculations.

6. If the jurisdictional clause were all there were to Section 10(f), there would be no ambiguity at all—this case would plainly belong in a circuit court. But that Section also contains a *venue* clause, which merits attention. Under Section 10(f), the venue for review is "any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in *or* wherein [the aggrieved] person resides or transacts business, *or* [the D.C. Circuit]." 29 U.S.C. § 160(f) (emphases added). To be sure, this clause seems to presume that the matter being venued is an unfair labor practice case. But as a matter of formal logic, Section 10(f)'s venue clause still accommodates initial circuit court review of pre-enforcement challenges to NLRB rules. Where there is no "unfair labor practice in question," that bucket of potential review forums is concededly empty. Even so, every aggrieved person seeking to set aside a Board rule will have access to a venue (and usually multiple venues) for review "wherein such person resides or transacts business, or [the D.C. Circuit]."[4]

7. Moreover, statutory ambiguity—or even silence, *NYRSC*, 799 F.3d at 1130 — means that the Board's motion should be granted. As explained above, when construing a direct-review provision, the D.C. Circuit (and other courts) will read it in favor of review except where there is some very clear indication that it does not cover a particular class of cases. *Nat'l Auto. Dealers Ass'n*, 670 F.3d at 270. AFL-CIO contends that courts have found such clear indications in Section 10(f)'s statutory context and the NLRA's legislative history. But, as shown below, all the authorities it cites are out-of-context references to distinctions not implicated in this case.

[4] Another example may help here: suppose that Congress had passed a law in 1960 stating that judicial review would be available "in any circuit court with fewer than six authorized judgeships or in which the plaintiff resides or transacts business." At the time of enactment, three circuit courts had fewer than six authorized judgeships; today, none do. *See* Administrative Office of U.S. Courts, Chronological History of Authorized Judgeships in U.S. Courts of Appeals, https://www.uscourts.gov/file/390/download (last accessed Apr. 17, 2020). This venue provision would still be perfectly functional, despite the fact that there are currently no circuit courts with fewer than six authorized judgeships, because any plaintiff would always have access to the venue in which it resides or transacts business.

8. As more fully explained in the Board's motion for summary judgment, the Board adjudicates two primary classes of cases—representation cases and unfair labor practice cases. Representation cases are initiated by the filing of a petition by a private party, are litigated by private parties, and end (if not dismissed as procedurally invalid) in issuance of a certification by the Board or a Regional Director that a labor organization does or does not represent employees. [ECF No. 22, at 2-3.] Unfair labor practice cases, by contrast, start with the filing of a charge by a private party, but as soon as that happens, are within the control of the agency's General Counsel, who decides whether to issue a complaint alleging violations of the NLRA and, if so, litigates the case before an administrative law judge. 29 C.F.R. § 101.2-3. Ultimately, unfair labor practice cases end at the administrative level with a final Board order dismissing the complaint, providing a remedy, or some combination of the two. *Id.* § 101.12.

9. The distinction between unfair labor practice and representation cases not only animates most of the cases that AFL-CIO cites, but seems to have prompted the placement of Section 10(f) within the Act.[5] When one reads the legislative history of the NLRA, or early cases interpreting it such as *American Federation of Labor v. NLRB*, 308 U.S. 401 (1940) (*AFL*), it becomes clear that the overriding concern of Congress was to prohibit direct judicial review of representation cases.[6] Under the pre-NLRA regime of judicial review, elections were not being held because orders to conduct such elections were stalled in the courts of appeals. *Id.* at 409 n.2.

---

[5] AFL-CIO's reliance upon the fact that NLRA Section 10 is captioned "prevention of unfair labor practices" is simply irrelevant— a caption "is of use only when it sheds light on some ambiguous word or phrase in the statute itself," *Carter v. United States*, 530 U.S. 255, 267 (2000) (cleaned up), and if this Court finds that Section 10(f) is ambiguous, AFL-CIO has already lost this motion. An oblique inference from a subject header is not a "firm indication" of congressional intent. *Nat'l Auto. Dealers Ass'n*, 670 F.3d at 270.

[6] *General Drivers, Chauffeurs & Helpers, Local 886, v. NLRB*, 179 F.2d 492, 494 (10th Cir. 1950), and *Inland Container Corp. v. NLRB*, 137 F.2d 642, 643 (6th Cir. 1943), cited by AFL-CIO, merely restate the principle of *AFL*.

"The conclusion is unavoidable," the Supreme Court held, "that Congress, as the result of a deliberate choice of conflicting policies, has excluded representation certifications of the Board from the review by federal appellate courts authorized by the Wagner Act except in the circumstances specified in § 9(d)." *Id.* at 411.[7] So when the Court said that the NLRA "on its face thus indicates a purpose to limit the review afforded by § 10 to orders of the Board prohibiting unfair labor practices," *id.* at 409, it was talking only about the exclusion of representation cases—not *sub silentio* deciding a question about the locus of judicial review of rulemakings in a case where no such question was ever presented. Congress made no "deliberate choice of conflicting policies" when it came to subject-matter jurisdiction of rulemaking suits.

10. The actual holding of *AFL* is that certifications in representation cases are not "final orders of the Board." *Id.* at 409. This means that they are not directly reviewable *anywhere*—not in circuit courts under NLRA Section 10(f), certainly, but also not in district courts under the Administrative Procedure Act (APA) either, since that Act allows review only of final agency action. 5 U.S.C. § 702; *see also id.* § 554(a)(6) (excluding from the APA's procedural requirements any adjudication involving "the certification of worker representatives"). As a result, district courts do not have jurisdiction to enjoin Board orders in representation cases, at least outside of truly black-swan circumstances involving either the possibility of an international incident or disregard of clear and obvious statutory commands where no other recourse is available. *Boire v. Greyhound Corp.*, 376 U.S. 473, 480 (1965) (citing *McCulloch* v. *Sociedad Nacional*, 372 U.S. 10, 17 (1961), and *Leedom v. Kyne,* 358 U.S.

[7] Section 9(d) provides that the record of a representation case "shall be included" with the record submitted to a court whenever a subsequent, related unfair labor practice order is challenged pursuant to the provisions of Section 10(f). 29 U.S.C. § 159(d). The "Wagner Act" mentioned by *AFL* is another name for the NLRA as originally enacted in 1935.

184, 188 (1958)). If *AFL* and its progeny were actually on point here, the result would not be that NLRB rulemakings involving representation matters would be reviewable in district court, but that they would not be reviewable *anywhere* until they are actually applied to a particular challenger—a result the Board once unsuccessfully urged in *American Hospital Ass'n v. NLRB* (*see* Mot. at ¶ 17 and n.3), but no longer believes to be correct. Rulemakings are final agency action under the APA, while representation certifications are not, and so caselaw interpreting Section 10(f) as prohibiting review of such certifications simply does not apply here.

11. The other primary line of cases that AFL-CIO cites to, exemplified by *NLRB v. United Food & Commercial Workers, Local 23*, 484 U.S. 112, 127 (1987), *Laundry Workers Int'l Union Local 221 v. NLRB*, 197 F.2d 701 (5th Cir. 1952), and *Lincourt v. NLRB*, 170 F.2d 306, 307 (1st Cir. 1948), is equally inapposite. Those cases involve dismissals or prehearing settlements of unfair labor practice charges, or the conduct of investigations, by the NLRB's General Counsel. But "the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint." *Vaca v. Sipes*, 386 U.S. 171, 182 (1967); *cf. UFCW Local 23*, 484 U.S. at 130-33 (citing 5 U.S.C. § 701(a)) (APA does not allow for judicial review of pre-hearing decisions to settle or decline prosecution of unfair labor practice cases because such review is precluded by the NLRA). Since no court may review the General Counsel's exercise of prosecutorial discretion, transferring such challenges to a different court to effectuate the inevitable dismissal would be a pointless exercise. *See* 28 U.S.C. § 1631 (transfers to cure want of jurisdiction appropriate only "if it is in the interest of justice").[8]

[8] AFL-CIO also cites two more rarely-issued types of Board orders that have been held to fall outside of Section 10(f). The first of these, orders quashing hearings in "jurisdictional dispute" cases governed by NLRA Section 10(k), 29 U.S.C. § 160(k), actually implicates a contentious—albeit narrow—circuit split. The Ninth Circuit has held that such orders are subject to direct judicial review. *See Foley-Wismer & Becker v. NLRB*, 682 F.2d 770 (9th Cir. 1982) (en banc). Other circuits disagree. *Shell Chem. Co. v. NLRB*, 495 F.2d 1116 (5th Cir. 1974); *Manhattan*

12. At the end of the day, there is simply nothing in either case law or legislative history that could provide any indication—much less the requisite "firm indication"—that Congress wanted NLRA rulemakings reviewed by district courts. This is not surprising, because such a desire would be irrational. As we previously explained (Mot. at ¶ 16), district courts play almost no role in the NLRA's statutory scheme, deciding only ancillary matters involving pendent injunctive relief and the enforcement of subpoenas where their case-management expertise and institutional agility has some bearing. They have no comparative advantage when it comes to reviewing an administrative record or deciding questions of law. Indeed, what's notably missing from AFL-CIO's opposition is any sense of why it *ought* to win this motion—what possible motive Congress could have had for deliberately excluding rulemakings from circuit court review under the NLRA. The reason for this is obvious—it does not exist. *There is no such motive.* The matter simply slipped through the proverbial cracks. At this point we are left to construe an ambiguous statute in a manner best befitting Congress's overall design, and that design, as explained above, was to commit judicial review of the Board's final orders to the circuit courts of appeals.[9]

---

*Constr. Co. v. NLRB*, 198 F.2d 320 (10th Cir. 1952). As the majority and dissenting opinions in *Foley-Wismer* make clear, however, the dispute is over whether such orders are in fact "final agency action" and therefore reviewable in circuit courts, or not final and not reviewable at all. No court has ever endorsed the position, analogous to the one AFL-CIO advances here, that they are reviewable in district courts.

Its other citation is to "administrative discipline" cases in which the Board reprimands, suspends, or disbars a practitioner from appearing before it under 29 C.F.R. § 102.177. Those cases are distinguishable—unlike rulemaking, a statutory function of the Board under Section 6 of the Act, administrative discipline is a nonstatutory housekeeping matter. In any event, the D.C. Circuit's resolution of *Keiler v. NLRB*, No. 95-1192, 1996 WL 103746 (D.C. Cir. 1996), is not only not precedential, it is not even citable as persuasive authority under the D.C. Circuit's local rules. D.C. Cir. R. 32.1(b)(1)(A) (unpublished dispositions "entered before January 1, 2002, are not to be cited as precedent").

[9] Pre-enforcement challenges to rules were rare and widely assumed to be unripe in 1947, when Congress last amended the NLRA's rulemaking provision. This did not change until twenty years later, when the Supreme Court issued its landmark decision in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). *See* Stephen G. Breyer & Richard B. Stewart, Administrative Law and Regulatory Policy 1110-11 (3d ed. 1992) ("Before *Abbott Laboratories*, the courts typically reviewed the lawfulness of an agency's rule, not when the agency promulgated the

13. The presumption wisely set forth in *Investment Co. Institute v. Board of Governors of the Federal Reserve System*, 551 F.2d 1270 (D.C. Cir. 1977)—that where Congress has certainly committed some matters to direct circuit-court review, courts should be extremely chary about finding that it relegated others to district court—controls this case and resolves the ambiguity in the NLRA's judicial-review provisions. It also eliminates a strange dichotomy in the way the Board's labor policy decisions have been reviewed thus far. Consider, for example, the Board's recently announced rule modifying the standard for determining whether two employers are a joint employer under the NLRA. *See Joint Employer Status Under the National Labor Relations Act*, 85 Fed. Reg. 11,184 (Feb. 26, 2020). Previously, the Board had changed that standard in an unfair-labor-practice case, which was reviewed by the D.C. Circuit in the first instance under Section 10(f). *Browning-Ferris Indus. of Cal., Inc.*, 362 NLRB 1599 (2015), *aff'd in part, rev'd in part and remanded*, 911 F.3d 1195 (D.C. Cir. 2018); *see generally NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) ("The Board is not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the Board's discretion."). There is no reason to suspect that Congress wanted circuit courts to exercise initial review of the Board's "new principles" when they are announced via adjudication but not when the Board chooses to act via rulemaking. Yet, this is precisely AFL-CIO's position. The better view—and the only one that is consistent with

rule, but when the agency enforced the rule."); *accord PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2060 (2019) (four-Justice concurrence in the judgment) ("To be sure, this Court's decision in *Abbott Laboratories v. Gardner* revolutionized administrative law by also allowing facial, pre-enforcement challenges to agency orders, absent statutory preclusion of such pre-enforcement review." (citation omitted and emphasis removed)). Thus, it is likely that the 1947 Congress simply assumed that judicial review of Board rules would occur only, if at all, in the post-enforcement context—that is, when a person aggrieved by application of a rule in an unfair-labor-practice case challenged the rule in a court of appeals under Section 10(f).

this Circuit's precedent—is that Section 10(f) is broad enough to encompass both adjudications and rules, so that circuit courts are not stripped of their initial jurisdiction in rulemaking cases.

14. Because AFL-CIO's attempts to distinguish the NLRA from the numerous statutes to which *Investment Co. Institute* has been applied are unconvincing,[10] the Board's motion should be granted and this matter transferred to the United States Court of Appeals for the D.C. Circuit.

Respectfully submitted,

Dated: April 22, 2020
Corrected April 27, 2020

WILLIAM G. MASCIOLI
*Assistant General Counsel*

DAWN L. GOLDSTEIN
*Deputy Assistant General Counsel*

KEVIN P. FLANAGAN
*Supervisory Attorney*

/s/Paul A. Thomas
PAUL A. THOMAS
*Trial Attorney*
National Labor Relations Board
Contempt, Compliance and Special Litigation Branch
paul.thomas@nlrb.gov
(202) 273-3788
1015 Half St. SE
Washington, DC 20003

[10] The principles announced in *Investment Co. Institute* have been applied to a plethora of statutory judicial review provisions both within and outside this Circuit. *E.g.*, *Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 347 (1st Cir. 2004) (reading *Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985), which cites *Investment Co. Institute* with approval, as instructing "that jurisdictional statutes should be construed so that agency actions will always be subject to initial review in the same court, regardless of the procedural package in which they are wrapped"); *Nat'l Parks & Conservation Ass'n v. FAA*, 998 F.2d 1523, 1526-28 (10th Cir. 1993) (Federal Aviation Act); *Nw. Airlines, Inc. v. Goldschmidt*, 645 F.2d 1309, 1314 (8th Cir. 1981) (following *Investment Co. Institute*); *Gen. Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy*, 764 F.2d 896 903 & n.37 (D.C. Cir. 1985) (Waste Act of 1982); *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 312–14 (7th Cir. 1980) (relying extensively on *Investment Co. Institute* to review regulation promulgated under the Federal Aviation Act); *City of Rochester v. Bond*, 603 F.2d 927, 932-35 (D.C. Cir. 1979) (Federal Aviation Act and Communications Act of 1934); *City of Chicago v. Fed. Power Comm'n*, 458 F.2d 731, 740–41 (D.C. Cir. 1971) (Natural Gas Act of 1938).

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that the attached document was filed on April 27, 2020, and served upon counsel of record for all parties via the court's CM/ECF system.

/s/ Paul A. Thomas